

# In The
# Court of Appeals
# Seventh District of Texas at Amarillo

No. 07-25-00360-CR
No. 07-25-00361-CR

CHRISTIAN CARMONA, APPELLANT

V.

THE STATE OF TEXAS, APPELLEE

On Appeal from the 158th District Court
Denton County, Texas[1]
Trial Court No. F23-1157-158, F23-1156-158, Honorable Steve Burgess, Presiding

August 11, 2026

MEMORANDUM OPINION

Before DOSS and YARBROUGH and PRATT, JJ.

Appellant, Christian Carmona, appeals from two judgments of conviction for indecency with a child by sexual contact.[2] A jury found him guilty in each of two causes tried together and assessed punishment at twelve years of confinement in each. The

---

[1] This cause was originally filed in the Second Court of Appeals. It was transferred to this Court by a docket-equalization order of the Supreme Court of Texas. *See* TEX. GOV'T CODE § 73.001. In the event of any conflict, we apply the transferor court's case law. TEX. R. APP. P. 41.3.

[2] *See* TEX. PENAL CODE § 22.11.

court ordered the sentences to run consecutively. In two issues, Appellant contends the evidence is insufficient to support the convictions and that the trial court erred by admitting an email in which a second teenage employee described other acts by the Appellant. We affirm.

## BACKGROUND

E.K., then 14, worked at a sandwich shop for two months during the summer of 2022. She took the job so she could buy a dog. Appellant, then thirty, was a shift lead who trained employees and helped set schedules. E.K. testified that most of her coworkers spoke Spanish, that she spoke only English and Russian, and that Appellant was one of the first people at the shop she could talk to.

According to E.K., Appellant initiated physical contact that progressed over those two months. Appellant began hugging her and kissing her forehead, then grabbed and slapped her buttocks as she walked past, then hugged her from behind and kissed her neck while she restocked the refrigerator. She also testified that she arranged for a coworker, E.S., to walk past at a moment when Appellant was touching her, because she wanted a witness.

Both indicted incidents occurred in the shop's back office. E.K. testified that on one occasion, she was leaning against the wall taking an unscheduled break while Appellant sat at the office computer. He reached over, placed his hand over her vagina through her jeans, and rubbed it. On a second occasion, E.K. was sitting on the floor while Appellant rubbed her shoulder. He asked whether she was comfortable. When she

2

replied in the affirmative, he reached through the collar of her uniform shirt, under her bra, and grabbed her left breast, skin to skin.

State's Exhibit 2, admitted without objection, is a 340-page compilation of messages E.K. identified as Appellant's text exchange with her. Read into the record were messages in which the sender called E.K. sweetheart and darling, referred to her legs and her body, asked whether he had gone "too far" with her "physically," wrote that he had not realized he was "basically groping" her "in a more intimate way," asked whether she was "okay with the petting and the groping," and proposed that they be "friends with benefits." Another described the sender cutting his finger on the zipper or button of E.K.'s jeans. E.K. testified that this exchange referred to an occasion when Appellant groped her through her clothing.[3]

E.K. did not report the conduct. Her mother discovered it during an argument on July 21, 2022, after taking away E.K.'s iPad. A message appeared on the screen under the contact name "Christian." E.K.'s parents took her to the police that day.

Detective Evan Dostal investigated. He testified that he determined Appellant's cell number, compared it to the number appearing in the extraction of E.K.'s devices, and found that the two matched. Asked whether he saw any indication that E.K. was fabricating the allegations, he answered that he did not. Kim Kunz, a forensic interviewer, testified that E.K. was calm and well-spoken during her interview and that she would have reported any red flags to law enforcement.

---

[3] She testified without objection about the incident that led to the message: "He was groping me over my vagina again, over the clothes. This was the one in a millionth time he's done this. And he cut himself on my zipper of my jeans. And that's what he was discussing."

Detective Dostal first attempted to contact Appellant in late August 2022. Appellant was arrested late November. A search of Appellant's phone produced messages with other people but none with E.K. Dostal testified that it was possible for someone to remove data from a phone over those three months without leaving a trace he could detect.

Before opening statements, the trial court took up a motion by Appellant to suppress evidence of extraneous offenses. The motion identified one item from the State's notice, an allegation that on or about June 2022 Appellant pressed his groin against E.S., another minor employee of the shop. Pursuant to article 38.37, section 2-a, Appellant asked the court to conduct the hearing that provision requires and asked that the State be barred from introducing any evidence of the incident. E.S., who was sixteen that summer and had become friends with E.K. at the shop, testified outside the jury's presence. She said she was cutting a sandwich when Appellant came up behind her, put his arms around her arms, and began cutting the sandwich with her hands. She told him she could do it herself. He pressed against her back and breathed in her ear, and she shoved him off, went to the restroom, and cried. Asked whether his groin was against her back, she answered yes.

On cross-examination, Appellant's counsel took up an email E.S. had sent to the shop's owner where she gave her resignation. E.S. confirmed the email was hers, that it was dated July 26, 2022, and that in it she had written Appellant's stomach was against her, not his groin. On redirect she testified that both could have been touching her.

The trial court overruled the motion and granted Appellant a running objection to E.S.'s testimony. When E.S. took the stand before the jury, she could not identify Appellant in the courtroom. Appellant renewed his objection and added that her inability to identify him made her account irrelevant. The trial court sustained the renewed objection, excused E.S. without permitting her to describe the incident, and instructed the jury not to speculate about what she might have said. The jury heard nothing from E.S. about the incident.

Appellant called the shop's owner, Valarie Johnston. She testified that eight cameras covered the store except the restrooms and the short hallway outside them, that the office door could not obscure the office camera, that she monitored the cameras frequently, and that she never saw inappropriate conduct between employees. She described the office as roughly four feet square and too small to hold two people comfortably. She testified that the system retained recordings for seven days and that no footage was ever produced to the police. She further testified that she sent Appellant home the day the police called her and that she later saw screenshots of messages between Appellant and E.K., which she believed E.S. had shown her.

Later, during further cross examination, the State asked whether law enforcement was the only source of what she had heard concerning Appellant, and she answered that her general manager had also contacted her. The State then used Johnston to authenticate State's Exhibit 3, the email E.S. had sent to the store's account in July 2022. Appellant renewed his running objection. The trial court overruled the objection, admitted the exhibit, and permitted Johnston to read it aloud. In the email, E.S. wrote that Appellant called her weird names and was always touchy even when she asked him not to be, that

5

E.K. had told her Appellant was putting his hands on her waistline, kissing the back of her neck, telling her she looked sexy, and asking her on dates. E.S. also wrote that the week before, while E.S. was cutting a sandwich, Appellant came up behind her, put his stomach against her back, put his hands over hers, and breathed in her ear. Johnston testified that Appellant had already left the store by the time she received the email.

Appellant's theory at trial was that the text messages did not come from him. He called a digital forensics expert, who testified that his firm performed an extraction of Appellant's phone and that the exchange with E.K. did not appear in the phone's deleted space. The witness also demonstrated for the jury how a website can generate a fabricated screenshot of a text message. On cross-examination, he could not recall the phone's age or storage capacity and could not recall the parameters he had been asked to search.[4] Asked whether he found any conversation between Appellant and E.K. in the data that had not been deleted, the witness answered that he believed the firm did, but that he could not say for certain.

## ANALYSIS

### A. Sufficiency of the Evidence

In his first issue, Appellant contends that the evidence is insufficient to prove beyond a reasonable doubt he engaged in sexual contact with E.K. We disagree.

An appellate court reviewing the sufficiency of the evidence to support a conviction considers all the evidence in the record, whether direct or circumstantial, and whether

---

[4] The expert agreed that a phone's age and storage capacity affect how far back an extraction can reach and what information remains available.

properly or improperly admitted. *Clayton v. State,* 235 S.W.3d 772, 778 (Tex. Crim. App. 2007); *Hooper v. State,* 214 S.W.3d 9, 13 (Tex. Crim. App. 2007). We review all the evidence in the light most favorable to the verdict and ask whether any rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt. *Jackson v. Virginia,* 443 U.S. 307, 318–19 (1979); *Chasco v. State,* 568 S.W.3d 254, 257–58 (Tex. App.—Amarillo 2019, pet. ref'd). We defer to the jury's credibility and weight determinations because the jury is the sole judge of the witnesses' credibility and the weight to be given their testimony. *Brooks v. State,* 323 S.W.3d 893, 899 (Tex. Crim. App. 2010). Our task is to determine whether the inferences the jury drew are reasonable in light of the cumulative force of the evidence. *See Wise v. State,* 364 S.W.3d 900, 903 (Tex. Crim. App. 2012).

Next, the elements. A person commits indecency with a child if he engages in sexual contact with a child younger than seventeen. *See* TEX. PENAL CODE § 21.11(a)(1). "Sexual contact" includes any touching by a person of the genitals or breast of a child, including touching through clothing, if committed with the intent to arouse or gratify the sexual desire of any person. TEX. PENAL CODE § 21.11(c)(1). That intent may be inferred from the defendant's conduct, his remarks, and the surrounding circumstances. *McKenzie v. State,* 617 S.W.2d 211, 216 (Tex. Crim. App. 1981); *Bazanes v. State,* 310 S.W.3d 32, 37 (Tex. App.—Fort Worth 2010, pet. ref'd). The testimony of a child victim, standing alone, will support a conviction. *See* TEX. CODE CRIM. PROC. art. 38.07(a), (b)(1); *Chasco v. State,* 568 S.W.3d 254, 257–58 (Tex. App.—Amarillo 2019, pet ref'd).

Applied here, E.K.'s testimony supplies each element. She testified that while the two were in the shop's office, Appellant rubbed her vagina through her jeans, and on

7

another occasion reached under her shirt and bra and touched her bare breast. She was fourteen. That testimony alone would carry both verdicts. TEX. CODE CRIM. PROC. art. 38.07(a), (b)(1).

The jury heard more. Messages attributed to Appellant, admitted without objection, asked E.K. whether he had gone too far with her physically, acknowledged that he had been groping her in a more intimate way, and asked whether she was okay with the petting and the groping. A message describing a cut finger corresponded to E.K.'s account of touching over her clothes. Those messages also supply the intent element, because a jury may infer the intent to arouse or gratify from an actor's words and conduct. *McKenzie*, 617 S.W.2d at 216; *Bazanes*, 310 S.W.3d at 37. On the question whether the messages came from Appellant, the detective testified that the sender's number matched Appellant's, and E.K. testified that the message her mother saw appeared under Appellant's name.

Appellant's arguments were presented to the jury: No coworker or customer came forward to say they witnessed any touching. Johnston testified that she monitored the cameras and saw nothing. The messages were absent from Appellant's phone. These describe conflicts in the evidence, and the jury had the proper authority to resolve them and in light of the credibility of the witnesses who discussed them. We may not reweigh the evidence or substitute our judgment for the factfinder's, and we do not sit as a thirteenth juror. *Brooks*, 323 S.W.3d at 899; *Isassi v. State*, 330 S.W.3d 633, 638 (Tex. Crim. App. 2010). Viewing the record in the light most favorable to the verdicts, we hold that a rational jury could have found each element of indecency with a child beyond a reasonable doubt in both causes. We overrule Appellant's first issue.

8

B. Admission of the Email from E.S.

In his second issue, Appellant challenges the admission of State's Exhibit 3, the July 26, 2022 email from E.S. to the sandwich shop. He argues the trial court admitted it without the hearing and the finding required by article 38.37 of the Texas Code of Criminal Procedure, that the conduct the email describes is not indecency with a child, and that its probative value was substantially outweighed by its prejudicial effect.

The admissibility of evidence is within the discretion of the trial court and will not be overturned absent an abuse of discretion. *Parker v. State*, 727 S.W.3d 38, 65–66 (Tex. Crim. App. 2025); *Moses v. State*, 105 S.W.3d 622, 627 (Tex. Crim. App. 2003). We will affirm if the admissibility ruling is within the zone of reasonable disagreement. *Parker v. State*, 727 S.W.3d 38, 65–66 (Tex. Crim. App. 2025); *Moses v. State*, 105 S.W.3d 622, 627 (Tex. Crim. App. 2003). If the trial court's evidentiary ruling is correct on any theory of applicable law, we will not disturb that ruling even if the trial judge gave the wrong reason. *De La Paz v. State*, 279 S.W.3d 336, 344 (Tex. Crim. App. 2009).

We begin with a brief observation about the objection before us. The running objection the trial court granted pertained to E.S.'s testimony, and the court had sustained it and excused E.S. from testifying. The State offered the exhibit through a different witness, Johnston. Appellant stated it was renewing the running objection; he did not state a ground directed at the email. A bench conference occurred during this exchange, but we have no record of its contents. Therefore, we assume without deciding that the renewal preserved a complaint about the exhibit. We nevertheless conclude the trial court did not abuse its discretion in admitting State's Exhibit 3 into evidence.

9

We conclude that article 38.37 does not govern this exhibit. Section 2(b) permits the State to offer evidence that the defendant committed a separate offense listed in section 2(a) against a child other than the complainant. TEX. CODE CRIM. PROC. art. 38.37, § 2(b). Section 2(a)(1)(C) lists indecency with a child among those offenses. TEX. CODE CRIM. PROC. art. 38.37, §§ 2(a)(1)(C), 2(b). Article 38.37 conditions use of this evidence on a hearing outside the jury's presence and a determination that the evidence will support a jury finding beyond a reasonable doubt. *Id.* § 2-a.

Article 38.37's provision for a hearing and finding reach the offenses enumerated in section 2(a). Here, we find evidence of no such offenses in State's Exhibit 3. The email describes Appellant putting his stomach against E.S.'s back and his hands over hers. It does not describe the touching of an anus, breast, or genitals, and it does not describe contact by any part of Appellant's anus, breast, or genitals. TEX. CODE CRIM. PROC. art. 38.37, § 2(a)(1)(C); TEX. PENAL CODE § 21.11(c).

This distinction matters because the State's proffer changed. What Appellant originally moved to suppress, and what the trial court heard outside the jury's presence, was E.S.'s account that Appellant pressed his *groin* against her back. What the jury received was the email, in which E.S. wrote *stomach*. In that regard, we agree with Appellant that the conduct the email describes is not indecency with a child. The consequence is that section 2-a's hearing and finding requirements were never triggered as to the exhibit; article 38.37 supplied neither the vehicle for its admission nor the obstacle to it. Notably, the statute does not limit the admissibility of evidence of extraneous crimes, wrongs, or acts under any other applicable law. TEX. CODE CRIM. PROC. art. 38.37, § 4.

10

Admissibility of State's Exhibit 3, then, turns on the ordinary rules of evidence. Rule 404(b)(1) provides that evidence of a crime, wrong, or other act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with that character. TEX. R. EVID. 404(b)(1). Such evidence may be admitted for another purpose, however, including proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake. TEX. R. EVID. 404(b)(2). The listed purposes are neither mutually exclusive nor exhaustive, and the rule operates as one of inclusion rather than exclusion. *De La Paz v. State*, 279 S.W.3d 336, 343 (Tex. Crim. App. 2009). "Rule 404(b) is a rule of inclusion rather than exclusion." *Parker v. State*, 727 S.W.3d 38, 65 (Tex. Crim. App. 2025). Among the permitted uses is rebuttal of a defensive theory of fabrication. *Bass v. State*, 270 S.W.3d 557, 563 (Tex. Crim. App. 2008). A defense opening statement can open the door to the State using rebuttal evidence without waiting until the defense rests. *Dabney v. State*, 492 S.W.3d 309, 317 (Tex. Crim. App. 2016).

These authorities demonstrate how State's Exhibit 3 meets the requisites of Rule 404(b)(2) in two independent ways. The first, to permit the State to rebut Appellant's theory that the text messages had been fabricated. From opening statement forward, Appellant maintained that the messages did not come from him. He cross-examined E.K. and the detective on the origin of the messages and called an expert who demonstrated how a text message can be fabricated. The email admitted in Exhibit 3, however, was written on July 26, 2022, by a different teenage employee, to the owner of the same shop, three years before trial. A trial court could reasonably conclude the exhibit tended to rebut Appellant's theory rather than merely to show character. *Bass*, 270 S.W.3d at 563.

11

The second purpose is impeachment. Johnston, the shop's owner, testified that she monitored the store's cameras frequently and never saw inappropriate conduct between employees. On redirect, she testified that she sent Appellant home out of an abundance of caution based on what she heard from law enforcement. That testimony left the impression that nothing occurring at the store had generated a complaint to her. The email showed that another employee had reported concerns about Appellant to her. Impeachment by contradiction is a recognized form of impeachment, *Michael v. State*, 235 S.W.3d 723, 726 (Tex. Crim. App. 2007), and a party who leaves a false impression opens the door to evidence correcting it, *Daggett v. State*, 187 S.W.3d 444, 453–54 (Tex. Crim. App. 2005). On either ground, the ruling falls within the zone of reasonable disagreement. *Parker*, 727 S.W.3d at 65–66.

Relevance under Rule 404(b) does not end the inquiry. Relevant evidence may still be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury. TEX. R. EVID. 403. The rule carries a presumption favoring admission. *Montgomery v. State*, 810 S.W.2d 372, 389 (Tex. Crim. App. 1990) (op. on reh'g). Evidence is unfairly prejudicial only when it has an adverse effect beyond its tendency to prove the fact that justifies its admission. *Chaparro v. State*, 505 S.W.3d 111, 116 (Tex. App.—Amarillo 2016, no pet.). Here, the email carried real probative force on the fabrication defense and on Johnston's account of what she knew and when. *See Gigliobianco v. State*, 210 S.W.3d 637, 641–42 (Tex. Crim. App. 2006). It carried little capacity to draw the jury toward a decision on an improper basis, to confuse or distract the jury, to give undue weight, or to consume an inordinate

12

amount of time.  *Id.*  The ruling admitting State's Exhibit 3 fell within the zone of reasonable disagreement.[5]  The trial court did not abuse its discretion.

We overrule Appellant's second issue.

#### CONCLUSION

Having overruled both of Appellant's issues, we affirm the trial court's judgment.


Lawrence M. Doss
Justice

Do not publish.

---

[5] Even assuming error, reversal would not follow.  The improper admission of an extraneous act is nonconstitutional error, which we disregard unless it affected a substantial right.  TEX. R. APP. P. 44.2(b).  The jury had E.K.'s account of both charged incidents, 340 pages of messages admitted without objection in which the sender acknowledged groping and petting, and the detective's testimony matching the sender's number to Appellant's.  Against that record, a one-paragraph email describing weird names and unwelcome touching gives fair assurance of no more than slight effect.